IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE KITTRELL, : | |
|     Plaintiff, : | |
| : | |
| v. : | CIVIL ACTION NO. 23-CV-0811 |
| : | |
| BARRY SMITH, *et al.*, : | |
|     Defendants. : | |

## MEMORANDUM

**Kenney, J.**                                                                                              **November 16, 2023**

Defendants Paul Little, D.O. ("Defendant Little"); Andrew Dancha, D.O.;[1] Muhammad Naji, M.D.;[2] John Nicholson, PA-C ("Defendant Nicholson"); and Wellpath, LLC ("Defendant Wellpath") (collectively, "Moving Defendants") move to dismiss all claims brought by Plaintiff Andre Kittrell ("Plaintiff") against Moving Defendants. ECF No. 20. Before this Court is Moving Defendants' Motion to Dismiss (ECF No. 20).[3] For the reasons set forth below, Moving Defendants' Motion to Dismiss is granted. An appropriate Order will follow.

### I. PROCEDURAL BACKGROUND

Plaintiff, a prisoner currently housed at SCI Chester, filed a *pro se* Complaint raising constitutional claims pursuant to 42 U.S.C. § 1983 based on alleged deliberate indifference and claims of medical malpractice related to a ruptured knee ligament and rectal bleeding. ECF No. 2. Plaintiff named 42 defendants in his Complaint, against many of whom he made no substantive allegations. On April 28, 2023, the Court dismissed with prejudice all claims against numerous

---

[1] This Court dismissed Defendant Dancha from this action on April 28, 2023. ECF Nos. 6-7.

[2] This Court dismissed Defendant Naji from this action on April 28, 2023. ECF Nos. 6-7.

[3] Plaintiff has not filed an Opposition in Response to the Motion. Plaintiff's filing at ECF No. 46 appears to be a response to Defendants Jamie Oliver and Terri Sechrengost's (collectively "Commonwealth Defendants") Answer at ECF No. 36.

defendants.[4] After the dismissal of those defendants, the following claims remained, as to Plaintiff's knee injury only: (1) the § 1983 deliberate indifference claims asserted against Lt. Oliver, PA Nicholson, Dr. Little, Wellpath, Terry Sechrengost, Dr. Bader, UPMC Altoona, and Dr. Tokhi; and (2) the negligence or medical malpractice claims asserted against Sechrengost, Nichsolson, Dr. Little, Wellpath, Dr. Bader, UPMC Altoona, and Dr. Tokhi. ECF No. 6 at 28; ECF No. 7.[5]

As such, the claims relevant to the defendants of this Motion to Dismiss are (1) the § 1983 deliberate indifference claims asserted against Defendants Nicholson, Little, and Wellpath that relate to Plaintiff's knee condition; and (2) the medical malpractice claims asserted against Defendants Nicholson, Little, and Wellpath that relate to Plaintiff's knee condition.

---

[4] Claims against the following defendants were dismissed: Superintendent Barry Smith, Jeff Mease, Muhammad Naji, April Gardner, Hnatkovich / S. Hnatkovich, J Altemus, M Lvicic, Kerri Moore, "D Varner," P.A. Austin, P.A. Tori, P.A. Jane Doe, Dancha, C/O Smith, Dr. James Angelo Costanzo, Dr. Yucha, Crozier Medical Center, Robert Zekonis, C/O Rivera, Dr. Hummer, Dr. Lutz, CHCA Favoloro, M Quinn, Alicia Ross, MRA Ms Birch, K Eason, Lackawana County Ultra Sound, G Clark, Holli Ike, BHBCS Bureau of Health Care Services, and Department of Corrections. ECF No. 7 ¶ 5. The Court dismissed the claims against Defendants former Secretary Wetzel and Acting Secretary George Little without prejudice to file an amended complaint within 30 days of the order. *Id.* ¶ 8. Plaintiff did not attempt to file an amended complaint that contained additional facts related to Defendants Secretary Wetzel and Acting Secretary George Little.

[5] The Court's April 28, 2023 memorandum stated that "[t]he medical malpractice negligence claim concerning the treatment of Kittrell's knee condition will be served on Defendants Sechrengost, Nicholson, Little, and Wellpath for the reasons already stated with regard to the deliberate indifference claims against them." ECF No. 6 at 28. The Court notes that the order accompanying that memorandum (ECF No. 7) erroneously omitted the remaining medical malpractice claim as to Defendants Nicholson, Little, Wellpath, and Terry Sechrengost. ECF No. 7 ¶ 9 ("If Kittrell does not file an amended complaint the Court will direct service of his initial Complaint alleging: (1) § 1983 deliberate indifference claims asserted against Lt. Oliver, PA Nicholson, Dr. Little, Wellpath, Terry Sechrengost, Dr. Bader, UPMC Altoona, and Dr. Tokhi; and (2) negligence or medical malpractice claims asserted against Sechrengost, Dr. Bader, UPMC Altoona, and Dr. Tokhi for a responsible pleading by those Defendants and on those claims based on his knee injury ONLY.") Moving Defendants in their Motion to Dismiss did address the medical malpractice claim. *See* ECF No. 20 at 8.

II.   **FACTUAL ALLEGATIONS**

Plaintiff alleges that his knee injury has been ignored, misdiagnosed, or inadequately addressed after he entered the Pennsylvania prison system in May 2021 having been diagnosed with a ruptured ACL. ECF No. 2 at 13. Relevant to the claims in Moving Defendants' Motion to Dismiss, Plaintiff alleges that on May 9, 2022, he saw Defendants Nicholson and Little who confirmed that Premier Orthopaedics had stated that Plaintiff had a torn ACL, and that surgery was needed. *Id.* at 21. Plaintiff further alleged that "[h]e[6] also confirmed that the Orthopedic at Penn State Orthop[a]edics stated the same thing. He also confirmed that Crozer Medical Center's MRI Report shows a Ruptured ACL and further injury; Biceps Femorris [*sic*] Tendon Tear." *Id.* Plaintiff alleges that Defendant Little stated that due to the normal results of Plaintiff's most recent MRI, he would not be able to refer Plaintiff to an orthopedist. *Id.* at 21-22. Plaintiff alleges that Defendant Nicholson "said that they can clearly see that there is a problem and that something is wrong, but when they submit the paperwork with the 'higher ups' that they ar[e] going to deny [Plaintiff's] request to be seen by an outside specialist." *Id.* at 22. Plaintiff further alleges that Defendant Nicholson stated "that the DOC (Department of Corrections) doesn't like to pay for these kinds of surgeries." *Id.* Plaintiff allegedly informed Defendants Nicholson and Little that Premier scheduled a tele-med call in which they informed him that the results of the second MRI were "wrong." *Id.*

Plaintiff alleges that on May 10, 2022, Defendant Little referred Plaintiff to a physical therapist who "concluded that the knee is loose and there is no stability," and that "there will be long-term effects such as arthritis, joint/bone damages, etc." *Id.* Plaintiff alleges that on May 18, 2022, Defendant Nicholson told Plaintiff "You know you can live with a torn ACL." *Id.* Plaintiff

---

[6] Plaintiff's allegation is not clear as to whether this refers to Defendant Nicholson or Little.

3

also alleges that he told Defendant Nicholson that his ACL was causing a lot of pain and discomfort, and that delaying surgery would cause further damage such as osteoarthritis, bone, joint, and/or ligament damage, and dislocation of the knee to which Defendant Nicholson said "I agree with everything you said but the DOC isn't going to pay for the surgery." *Id.* Plaintiff further alleges that Defendant Nicholson stated that the DOC would not pay for the surgery unless the knee was "swollen and busted," and that "there's plenty of guys here with torn ACLs, and the DOC won't pay for them unless they're causing a problem." *Id.* at 23.

Plaintiff alleges that on November 11, 2022, during a sick call visit, Defendant Little concluded that Plaintiff's knee "definitely isn't normal" and stated he would submit "a Collegial Review" for a surgical consult. *Id.* at 24. Plaintiff refers to assessments made by Defendant Little on November 16, 2022 and November 25, 2022 indicating an ACL tear in Plaintiff's left knee. *Id.* at 30. Plaintiff alleges that on January 5, 2023, Defendant Little told Plaintiff, "Your MRI results are Remarkable. I think it[']s time to put this entire ACL thing to bed." *Id*. Plaintiff alleges that he complained to Defendant Little about the "constant misdiagnosis of these MRIs by Radiologists" that caused his predicament and that Defendant Little said that the earlier MRI records showed that Kittrell's knee was normal. *Id*. at 30-31. Plaintiff alleges that during this office visit, Defendant Little found a 2019 MRI report indicating that the ACL tear had healed, although the SCI Chester health care coordinator allegedly acknowledged that an ACL tear does not heal on its own. *Id.* at 31. Defendant Little and the SCI Chester health care coordinator then allegedly stated that they would obtain the imaging from the December 28, 2022 MRI. *Id.* That imaging was then sent to Premier Orthopaedics. *Id.* at 33. The health care coordinator told Plaintiff that Defendant Little would call Premier Orthopaedics for an update. *Id.*

### III. STANDARD OF REVIEW

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Additionally, "[a] pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

### IV. DISCUSSION

#### A. Deliberate indifference claim

At issue in this motion are Plaintiff's § 1983 deliberate indifference claims asserted against Defendants Little, Nicholson, and Wellpath that relate to Plaintiff's knee condition.

##### i. Defendants Little and Nicholson

To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to the prisoner's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Baumgardner v. Ebbert*, 535 F. App'x 72, 75 (3d Cir. 2013).[7] "A medical need is serious, . . . if it is one that has

---

[7] The standard under the Eighth Amendment for convicted prisoners and under the Fourteenth Amendment for pretrial detainees is essentially the same for purposes of this analysis and courts will cite cases applying either amendment. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

5

been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted); *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (holding that a serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death"). Here, Plaintiff's knee injury involving a torn anterior cruciate ligament (ACL) is a serious medical need. *See Romero v. Ahsan*, 827 F. App'x 222, 226 (3d Cir. 2020) ("[I]t is clear that [Plaintiff']s injury—involving a torn anterior cruciate ligament (ACL), meniscal tear, and other knee damage—constituted a serious medical condition that was diagnosed by a physician as requiring treatment.") (internal quotations omitted).

As such, the Court's inquiry turns to whether Plaintiff has properly alleged deliberate indifference of this serious medical need. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004).

Moving Defendants argue that Plaintiff's complaint "demonstrates an attentive course of treatment" in which Moving Defendants evaluated Plaintiff and recommended that Plaintiff see an

6

outside therapist. ECF No. 20-1 at 7. Moving Defendants further argue that Plaintiff fails to plead the state of mind required for a claim of deliberate indifference and fails to show that Moving Defendants "turned a blind eye to his injury." *Id.* Moving Defendants further argue that Plaintiff "is merely second guessing the treatment provided." *Id.*

The Court finds that, on the face of the Complaint, Plaintiff has alleged mere disagreement with his medical treatment. Plaintiff does not allege any facts to support that Defendants Nicholson or Little (1) knew of a need for medical treatment but intentionally refused to provide it; (2) delayed necessary medical treatment based on a non-medical reason; or (3) prevented Plaintiff from receiving necessary medical treatment. The Court now turns to specific allegations in the Complaint.

First, confirmation by either Defendant Nicholson or Little that previous medical providers of Plaintiff had stated that surgery was necessary does not mean that Defendants Nicholson or Little were also required to conclude that surgery was necessary for Plaintiff's torn ACL. *Romero*, 827 F. App'x at 227 ("[M]ere disagreement with the course of treatment does not create an actionable constitutional violation. . . . And no actionable claim arises when a doctor disagrees with the professional judgment of another doctor, because there may be several acceptable ways to treat an illness.") (cleaned up).

Second, even taking as true Plaintiff's allegation that Defendant Nicholson agreed that delaying surgery would cause further damage, and Defendant Nicholson's alleged statements that the DOC would not pay for ACL surgery, nothing in the Complaint reflects that Defendant Nicholson knew or believed that surgery was medically necessary. *See* ECF No. 2 at 23. Plaintiff alleges that Defendant Nicholson stated that the DOC would pay for surgery only when a torn

ACL is "causing a problem," suggesting that Defendant Nicholson did not believe that there was such a problem or that surgery was medically necessary. *See id.*

Third, the Court further finds that Defendant Little's alleged statement that Plaintiff's ACL tear had healed according to an August 2019 MRI, even in light of the SCI Chester health care coordinator's alleged acknowledgement that an ACL tear does not heal on its own, does not show deliberate indifference. *Id.* at 31. After Defendant Little allegedly stated that the tear had healed based on the 2019 MRI, he and the SCI Chester health care coordinator allegedly stated that they would obtain imaging from a more recent MRI. *Id.* The imaging from the December 28, 2022 MRI was then sent to Premier Orthopaedics. *Id.* at 33. Further, the health care coordinator told Plaintiff that Defendant Little would call Premier Orthopaedics for an update. *Id.* None of these alleged facts reflects that Defendant Little knew or believed that surgery was medically necessary.

Fourth, failing to order a knee brace for Plaintiff allegedly because it was an "expensive purchase" does not show that either Defendant Nicholson or Little deemed that the knee brace was medically necessary.

Accordingly, the Court dismisses Plaintiff's § 1983 claims against Defendants Little and Nicholson.

### ii. Defendant Wellpath

Plaintiff alleges that Defendant Wellpath is the healthcare provider contracted by the Pennsylvania Department of Corrections and is responsible for the conduct of its employees and approving medical treatment by outside vendors. ECF No. 2 at 25. The Third Circuit has held that "a private health company providing service to inmates cannot be held responsible for the acts of its employees under a theory of respondeat superior or vicarious liability." *Sims v. Wexford Health Sources*, 635 F. App'x 16, 20 (3d Cir. 2015) (internal quotations omitted); *see also Natale v.*

8

*Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 691 (1978)). As such, in order for Wellpath to be liable, Plaintiff must "provide evidence that there was a relevant [Wellpath] policy or custom, and that the policy caused the constitutional violation [Plaintiff] allege[s]." *Natale*, 318 F.3d at 584. Plaintiff appears to name Wellpath as a defendant because it employs Defendants Little and Nicholson. However, Plaintiff does not tie any alleged constitutional violations to a policy or custom of Wellpath. Accordingly, the Court dismisses Plaintiff's § 1983 claim against Wellpath.

### B. Medical malpractice claim

Pennsylvania Rule of Civil Procedure 1042.3 requires that a plaintiff bringing a claim of medical malpractice or medical negligence file a certificate of merit within 60 days after filing the complaint. Pa.R.C.P. No. 1042.3.

> The certificate must attest to the colorable merit of the claim by including one of the following statements: (1) that 'an appropriate licensed professional' has supplied a written statement that there is a reasonable probability that the defendant's conduct fell outside acceptable professional standards; (2) that the claim against the defendant is based solely on allegations against other professionals for whom the defendant is responsible; or (3) that expert testimony is unnecessary for prosecution of the claim.

*Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008). Rule 1042.3 is a substantive state law that applies in federal courts, to both represented plaintiffs and *pro se* plaintiffs. *Id.* Though failure to comply with Rule 1042.3 is not fatal if a plaintiff can show a "reasonable excuse" for the noncompliance (*id.*), an inmate's lack of access to their medical records and files is not a sufficient excuse for failing to file a certificate of merit. *Baumgardner*, 535 F. App'x at 77 n.5.

Here, Plaintiff commenced this action on March 1, 2023. The 60-day period for the filing of the certificate of merit or a motion for an extension expired on May 1, 2023. The case was placed in suspense on June 16, 2023, and ultimately removed from suspense on August 8, 2023, after which Plaintiff requested an extension of time to file a certificate of merit in a motion that

was filed on August 24, 2023. ECF No. 32.[8] The Court granted Plaintiff's motion, extending the deadline to file a certificate of merit to October 2, 2023. ECF No. 34.

Plaintiff requested a second deadline extension (ECF No. 42) which the Court granted, extending the deadline to November 1, 2023, and noting that "[n]o further deadline extensions will be granted." ECF No. 43. In that second request, Plaintiff wrote that his status as an incarcerated *pro se* plaintiff "makes the [litigation] process for plaintiff more tedious, time consuming, and difficult" due to the following: limited library access, limited recreational time during which Plaintiff could contact physicians and organizations assisting Plaintiff, prison lockdowns, limited access to phone calls, and slow mail delivery process. ECF No. 42 at 1-4. Plaintiff further wrote that he was in correspondence with the Medical Justice Alliance through the Legal Eagles organization, and that "it will take several weeks to pair plaintiff's case with the appropriate physician (orthopedic)." *Id.* at 4. Plaintiff attached an email message from Legal Eagles which states that Plaintiff had submitted a case request for review to medicaljusticealliance.org. *Id.* at 7. Plaintiff wrote that he was waiting for medical documentation from the prison's medical department, and that he was waiting to receive funds from his family to pay for the medical documents. *Id.* at 4. A form that Plaintiff attached to the motion shows that Plaintiff did not submit a "release of information form" to obtain medical documentation until August 18, 2023—well after the original May 1, 2023 deadline. *Id.* at 13.

Plaintiff requested a third deadline extension in a motion filed on November 2, 2023. ECF No. 49. In that request, Plaintiff stated that he received his medical records on October 5, 2023,

---

[8] The Court notes that attached to the August 24, 2023 motion was Plaintiff's Answer to Defendants Little, Dancha, Naji, Nicholson, and Wellpath's Motion to Dismiss—not a document with supporting arguments or information regarding Plaintiff's request for a deadline extension.

but that he was not able to make copies of documents due to copying costs and a change in the library copying system. *Id.* at 2. In the same motion, Plaintiff requested that the Court compel an MRI. *Id.* at 3. Plaintiff attached a form in which he requested an MRI of his knee to which the Corrections Health Care Administrator responded that only a medical provider could authorize such a test. *Id.* at 11. The Court denied the motion, having already granted Plaintiff two deadline extensions to file a certificate of merit. ECF No. 50.

Plaintiff's status as an incarcerated and *pro se* litigant, and difficulties that may come with such a status, do not eliminate the requirements of Rule 1042.3. *See Perez v. Griffin*, No. 1:06-CV-1468, 2008 WL 2383072 at *3 (M.D. Pa. June 9, 2008), *aff'd*, 304 F. App'x 72 (3d Cir. 2008) (affirming district court's granting of motion for judgment on the pleadings after incarcerated plaintiff failed to file a certificate of merit); *see also Koukos v. Chester Cnty.*, No. CV 16-4602, 2017 WL 549150, at *4 (E.D. Pa. Feb. 7, 2017) ("It is well established that the requirement [of Rule 1042.3] applies to inmates who receive medical care while incarcerated.") (citing cases).

Similar to Plaintiff here, the incarcerated plaintiff in *Zierke v. United States* failed to file a certificate of merit and argued that "he is 'incarcerated' and 'is locked down 23 hrs a day and is unable to locate a licensed liver expert, nor can he get assistance from BOP medical staff, who are at the core of this law suit, and [he] cannot simply forge a doctor's name.'" No. 3:CV-15-0264, 2016 WL 862788, at *7 (M.D. Pa. Mar. 7, 2016) (citing Brief in Opposition at 7). The court there found the plaintiff's argument without merit, reasoning that the Certificate of Merit requirement applies to all plaintiffs, including *pro se* and incarcerated plaintiffs, and dismissed the plaintiff's medical negligence claim. *Id.* Here, Plaintiff did not file the required certificate of merit, nor has he provided a reasonable excuse for the noncompliance.

Accordingly, the Court dismisses Plaintiff's medical malpractice claims against Defendants Little, Nicholson, and Wellpath.

## IV.  CONCLUSION

For the foregoing reasons, Moving Defendants' Motion to Dismiss[9] will be granted. A separate Order will be issued.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, J.**

---

[9] As noted above, Defendants Dancha and Naji were included in this Motion but were already dismissed from this action by the Court on April 28, 2023. ECF Nos. 6-7.