IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ANDRE KITTRELL,<br>　　Plaintiff, | :<br>:<br>: |
| v. | :     CIVIL ACTION NO. 23-CV-0811 |
| | : |
| BARRY SMITH, *et al.*,<br>　　Defendants. | :<br>: |

### MEMORANDUM

**Kenney, J.**                                                                                   **November 30, 2023**

Defendant Dov Bader, M.D. ("Defendant Bader") moves to dismiss all claims brought by Plaintiff Andre Kittrell ("Plaintiff") against him. ECF Nos. 44, 45. Before this Court is Defendant Bader's First[1] Motion to Dismiss, filed on September 19, 2023 (ECF No. 44).[2] For the reasons set forth below, Defendant Bader's Motion to Dismiss is granted. An appropriate Order will follow.

### I.    PROCEDURAL BACKGROUND

Plaintiff, a prisoner currently housed at SCI Chester, filed a *pro se* Complaint raising constitutional claims pursuant to 42 U.S.C. § 1983 based on alleged deliberate indifference and claims of medical malpractice related to a ruptured knee ligament and rectal bleeding. ECF No. 2. Plaintiff named 42 defendants in his Complaint, against many of whom he made no substantive allegations. On April 28, 2023, the Court dismissed with prejudice all claims against numerous defendants,[3] leaving the following claims as to Plaintiff's knee injury only: (1) the § 1983

---

[1] Defendant Bader filed a subsequent Motion to Dismiss on November 2, 2023, after Plaintiff's deadline for filing a certificate of merit had passed.

[2] Plaintiff has not filed an Opposition in Response to the Motion. Plaintiff's filing at ECF No. 46 appears to be a response to Defendants Jamie Oliver and Terri Sechrengost's (collectively "Commonwealth Defendants") Answer at ECF No. 36.

[3] Claims against the following defendants were dismissed: Superintendent Barry Smith, Jeff Mease, Muhammad Naji, April Gardner, Hnatkovich / S. Hnatkovich, J Altemus, M Lvicic, Kerri

deliberate indifference claims asserted against Lt. Oliver, PA Nicholson, Dr. Little, Wellpath, Terry Sechrengost, Dr. Bader, UPMC Altoona, and Dr. Tokhi; and (2) the negligence or medical malpractice claims asserted against Defendants Sechrengost, Nicholson, Dr. Little, Wellpath, Dr. Bader, UPMC Altoona, and Dr. Tokhi. ECF No. 6 at 28; ECF No. 7.[4] As such, the claims relevant to Defendant Bader in this Motion to Dismiss are (1) the § 1983 deliberate indifference claim that relates to Plaintiff's knee condition; and (2) the medical malpractice claim that relates to Plaintiff's knee condition.

## II. FACTUAL ALLEGATIONS

Plaintiff alleges that his knee injury has been ignored, misdiagnosed, or inadequately addressed after he entered the Pennsylvania prison system in May 2021 having been diagnosed with a ruptured anterior cruciate ligament (ACL). ECF No. 2 at 13. Relevant to the claims in Defendant Bader's Motion to Dismiss, Plaintiff alleges that on July 13, 2021, he was taken to Penn State Orthopedic and seen by Defendant Bader who diagnosed Plaintiff with a torn biceps femoris. *Id.* at 16. Defendant Bader showed Plaintiff an x-ray and told him he could not repair the injury and would have to "[r]econstruct it around the repairing of the ACL." *Id.* Defendant Bader

---

Moore, "D Varner," P.A. Austin, P.A. Tori, P.A. Jane Doe, Dancha, C/O Smith, Dr. James Angelo Costanzo, Dr. Yucha, Crozier Medical Center, Robert Zekonis, C/O Rivera, Dr. Hummer, Dr. Lutz, CHCA Favoloro, M Quinn, Alicia Ross, MRA Ms Birch, K Eason, Lackawana County Ultra Sound, G Clark, Holli Ike, BHBCS Bureau of Health Care Services, and Department of Corrections. ECF No. 7 ¶ 5. The Court dismissed the claims against former Secretary Wetzel and Acting Secretary George Little without prejudice to file an amended complaint within 30 days of the order. *Id.* ¶ 8. Plaintiff did not attempt to file an amended complaint that contained additional facts related to Defendants Secretary Wetzel and Acting Secretary George Little.

[4] The Court's April 28, 2023 Order stated the following: "If Kittrell does not file an amended complaint the Court will direct service of his initial Complaint alleging: (1) § 1983 deliberate indifference claims asserted against Lt. Oliver, PA Nicholson, Dr. Little, Wellpath, Terry Sechrengost, Dr. Bader, UPMC Altoona, and Dr. Tokhi; and (2) negligence or medical malpractice claims asserted against Sechrengost, Dr. Bader, UPMC Altoona, and Dr. Tokhi for a responsible pleading by those Defendants and on those claims based on his knee injury **ONLY**." ECF No. 7 ¶ 9.

allegedly told Plaintiff that the sleeve Plaintiff was issued at the prison did not do anything but keep his knee warm, "and an immobilizer would be more appropriate to stabilize the knee." *Id.* Plaintiff also alleges that Defendant Bader stated that surgery is mandatory. *Id.* Defendant Bader wrote a report diagnosing the injury, recommending treatment with anti-inflammatories and Tylenol for pain, and an "[e]valuation with repeat MRI for Preoperative follow-up to review MRI." *Id.*

Plaintiff received an MRI of his left knee on September 27, 2021 at UPMC Altoona. *Id.* at 18. On October 14, 2021, P.A. Austin told Plaintiff that the MRI was normal and on October 19, 2021, Dr. Naji reported that the MRI was normal. *Id.* The report was sent to Defendant Bader who "called back . . . stating that there is no need to be seen by [Defendant Bader]." *Id.* Thereafter, Plaintiff submitted several other requests asking for Defendant Bader's treatment plan. *Id.* at 18-19. On November 2, 2021, Plaintiff was informed by a health service administrator that "[y]our MRI was sent to the Orthopedic Surgeon [Defendant Bader] and he read it and it was normal, so no need for you to be seen again by him." *Id.* at 19. Plaintiff then filed a grievance with Defendant Health Service Administrator Jeff Mease about the lack of a follow-up appointment because his prior x-ray showed a torn ligament that Defendant Bader told him needed to be reconstructed. *Id.* at 19.

### III. STANDARD OF REVIEW

For a complaint to survive dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6), it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of

the non-moving party. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Additionally, "[a] pleading that offers 'labels and conclusions' . . . will not do. Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (citations omitted).

IV. **DISCUSSION**

    A. **Deliberate Indifference Claim**

At issue in this motion is Plaintiff's Section 1983 deliberate indifference claim relating to Plaintiff's knee condition asserted against Defendant Bader. A plaintiff alleging a claim under Section 1983 must allege (1) a violation of a constitutional right; and (2) that the alleged violation was committed by a person acting under the color of state law. *Cahill ex rel. L.C. v. Live Nation*, 512 F. App'x 227, 230 (3d Cir. 2013).

        i. **Defendant Bader as a state actor**

Defendant Bader argues that he is not subject to Section 1983 liability because he is not a state actor and was not acting under the color of state law. ECF No. 44 at 9.

A private entity is liable under Section 1983 only if it "'may fairly be said to be a state actor.'" *Id.* (citing *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). "The principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Leshko v. Servis*, 423 F.3d 337, 339 (3d Cir. 2005) (internal quotations omitted). "To answer that question, [the Third Circuit has] outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in

4

concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009) (internal quotations and alteration omitted).

Defendant Bader argues that Plaintiff fails to allege that Defendant Bader is subject to Section 1983 liability under any of the three broad tests outlined by the Third Circuit.

First, as to whether Defendant Bader exercised powers that are traditionally the exclusive prerogative of the state, the Supreme Court has stated that "[i]t is only those physicians authorized by the State to whom the inmate may turn." *West v. Atkins*, 487 U.S. 42, 55 (1988). Defendant Bader argues that he was not delegated the duty of providing medical care to inmates merely by agreeing to see Plaintiff for a single orthopedic appointment outside the prison on July 13, 2021. ECF No. 44 at 9. He further argues that neither SCI-Houtzdale nor the Commonwealth of Pennsylvania relied on him to fulfill the obligation of medical care. *Id.*

Defendant Bader argues, moreover, that neither he nor Penn State Orthopedics were contracted by the Department of Corrections. *Id.* Whether or not outside medical providers, to whom prison officials refer inmates for medical treatment that the prison cannot itself provide, can be deemed to be state actors generally turns on whether those providers do so pursuant to a contract with the state.[5] *See West*, 487 U.S. at 55-56 (stating to act under "color of state law" a defendant

---

[5] *See Illescas v. Annucci*, No. 21-8473, 2022 WL 17539696, at *4 (S.D.N.Y. Dec. 7, 2022) (collecting cases and distinguishing between defendants that treat prisoner plaintiffs at private hospitals where there is no allegation that the treatment is "provided pursuant to a contract between the government and the private hospital" and non-public medical providers that provide inmates with medical treatment outside of a prison pursuant to a contract, and holding that the latter may be state actors); *Bevins v. Becker Cty., Minnesota*, No. 16-4340, 2018 WL 7247176, at *10 (D. Minn. Oct. 30, 2018), *report and recommendation adopted*, 2019 WL 397322 (D. Minn. Jan. 31, 2019) (finding private physicians were not state actors where there was no contract and no proof of an ongoing relationship between the jail and the physicians, where it appeared that inmates were

5

must be "clothed with the authority of state law" and holding that a physician who is under contract with the state to provide medical services to inmates at a state-prison hospital acted "under color of state law" within the meaning of § 1983 when treating an inmate). Here, Plaintiff does not specifically allege whether Defendant Bader treated Plaintiff pursuant to a contract with the state.

Second, as to whether Defendant Bader acted in concert with, or with the help of, state officials in providing medical care to Plaintiff, Defendant Bader argues that he provided independent medical expertise. Defendant Bader argues that State Corrections staff did not request that he see Plaintiff again, and that "[a] single outpatient clinical visit did not transform Dr. Bader into a state actor." *Id.* at 10.

Third, Defendant argues that he was not a "joint participant in the challenged activity," *see Borrell v. Bloomsburg Univ.*, 870 F.3d 154, 160 (3d Cir. 2017), as he did not participate in the alleged decision by prison medical staff that additional follow-up and surgery was not required. *Id.* at 10-11. Defendant Bader writes that "[w]hen the MRI results were later read as 'normal,' he informed State Corrections Medical Staff that Mr. Kittrell did not need to be seen again," and that "[u]nderstandably, because SCI-Houtzdale repeatedly cited Dr. Bader's opinion as a reason for

---

taken to physicians' facilities on an as-needed basis, and the physicians treated inmates in a private facility and exercised independent medical judgment); *Griffis v. Medford*, No. 05-3040, 2007 WL 2752373, at *6 (W.D. Ark. Sept. 20, 2007) (finding that "a private physician treating an inmate at a private facility utilizing his independent medical judgment is not answerable to the state and does not act under color of state law for purposes of § 1983"); *Sykes v. McPhillips*, 412 F. Supp. 2d 197, 204-05 (N.D.N.Y. 2006) ("Dr. Jagoda's non-contractual provision of medical services outside of the prison context, in an emergency room, is not sufficient conduct to support a finding of state actor status."); *see also Steele v. Meade Cty. Jail Officials*, No. 06-5087, 2008 WL 4449924, at *2 n.1 (D.S.D. Sept. 18, 2008) (citing cases examining whether the actions of private physicians who are not under contract with the jail fall under the umbrella of state action); *cf. Connor v. Donnelly*, 42 F.3d 220, 222-23 (4th Cir. 1994) (holding that private physicians who treat state prisoners without a contract are state actors because of their function of providing medical care on behalf of the state and with the state's authorization).

their decisions, Mr. Kittrell is critical of Dr. Bader and appears to question his medical opinion that the MRI reading was normal in seeming contrast with his prior exam and x-ray imaging." *Id.* at 11. Defendant Bader argues that Plaintiff does not allege that Defendant Bader *refused* to examine Plaintiff, but only that prison staff told Plaintiff not to contact Defendant Bader. *Id.*

Though "it is unsettled whether a doctor who works for a private medical facility can nonetheless be considered a state actor for having treated a prisoner[,]" *Moy v. DeParlos*, No. 1:18-CV-1575, 2019 WL 4221072, at *6–7 (M.D. Pa. Sept. 5, 2019), the Third Circuit suggested in *Jones v. Hashagen*, 512 Fed. App'x 179 (3d Cir. 2013) that whether a private doctor is considered a state actor turns on the length and extent of the doctor's care. There, the Third Circuit briefly discussed, but did not decide, the issue.[6] In its discussion, the Third Circuit referenced *Conner v. Donnelly*, 42 F.3d 220 (4th Cir. 1994) in which the Fourth Circuit found that a doctor not under a state contract acted under the color of state law when he voluntarily treated an inmate on four occasions over a six-month period. *Jones*, 512 Fed. App'x at 182. The Third Circuit contrasted that case from *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816 (7th Cir. 2009) in which the Seventh Circuit found that a doctor not under state contract did not become a state actor by providing treatment in an emergent care setting. *Jones*, 512 Fed. App'x at 182-83.

In *Jones*, the plaintiff was treated at the prison's infirmary and then sent to an outside hospital for further treatment; however, when he returned to the prison, he "remained under the care" of the doctor who treated plaintiff in the outside hospital and whose state actor status was at

---

[6] In *Jones,* the remaining issue in the case before the Third Circuit was whether the district court properly dismissed claims against the defendants in their official capacities, including a physician who treated an inmate. 512 Fed. App'x at 182. Had the physician defendant been acting under the color of state law, he would have been immune from suit; had the physician defendant not been acting under the color of state law, he could not be subject to liability under Section 1983. *Id.* at 182-83. As such, the Third Circuit did not need to decide the status of the private physician.

issue. *Id.*; *Jones v. Lindler*, No. 4:09-CV-0887, 2012 WL 1020279, at *1 (M.D. Pa. Mar. 26, 2012), *aff'd sub nom. Jones v. Hashagen*, 512 F. App'x 179 (3d Cir. 2013). The doctor's name appeared on the plaintiff's medical chart and medical bracelet, but the doctor maintained that he did not examine or treat the plaintiff. *Jones*, 512 F. App'x at 183 n.2.

The Third Circuit stated that the facts of *Jones* were more similar to those of *Rodriguez* as it was unclear whether the doctor *voluntarily* assumed the state's responsibility to treat the plaintiff's medical needs. *Id.* at 182-83, 182 n.2. The Third Circuit quoted the *Rodriguez* court's language that "providers 'that have only an incidental and transitory relationship with the state's penal system usually cannot be said to have accepted, voluntarily, the [state's] responsibility' to care for the inmate's medical needs." *Id.* at 182 n.2 (citing *Rodriguez*, 577 F.3d at 827).

The Third Circuit's analysis suggests that Defendant Bader's single appointment with Plaintiff did not transform Defendant Bader into a state actor. However, even assuming that Defendant Bader acted under the color of state law and is therefore subject to Section 1983 liability, Plaintiff has not properly alleged deliberate indifference of a serious medical need.

### ii. Plaintiff has not properly alleged deliberate indifference of a serious medical need

Even assuming that Defendant Bader is a state actor, Plaintiff has not properly alleged deliberate indifference of a serious medical need. To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to the prisoner's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Baumgardner v. Ebbert*, 535 F. App'x 72, 75 (3d Cir. 2013).[7] "A

---

[7] The standard under the Eighth Amendment for convicted prisoners and under the Fourteenth Amendment for pretrial detainees is essentially the same for purposes of this analysis and courts will cite cases applying either amendment. *See Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019); *Parkell v. Morgan*, 682 F. App'x 155, 159-60 (3d Cir. 2017) (*per curiam*).

medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks omitted); *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (holding that a serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death"). Here, Plaintiff's knee injury involving a torn ACL is a serious medical need. *See Romero v. Ahsan*, 827 F. App'x 222, 226 (3d Cir. 2020) ("[I]t is clear that [Plaintiff']s injury—involving a torn anterior cruciate ligament (ACL), meniscal tear, and other knee damage—constituted a serious medical condition that was diagnosed by a physician as requiring treatment.") (internal quotation marks omitted).

As such, the Court's inquiry turns to whether Plaintiff has properly alleged deliberate indifference of a serious medical need. Deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[T]he deliberate indifference standard affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," and as such, a court "must disavow any attempt to second-guess the propriety or adequacy of [their] particular course of treatment so long as it remains a question of

9

sound professional judgment." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (internal quotation marks and citations omitted). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

The Court finds that, on the face of the Complaint, Plaintiff has alleged mere disagreement with his medical treatment. Plaintiff does not allege any facts to support that Defendant Bader (1) knew of a need for medical treatment but intentionally refused to provide it; (2) delayed necessary medical treatment based on a non-medical reason; or (3) prevented Plaintiff from receiving necessary medical treatment. Even taking as true Plaintiff's allegation that Defendant Bader stated during his appointment with Plaintiff that surgery was necessary does not mean that Defendant Bader acted with deliberate indifference when he changed the recommended course of treatment following review of an updated MRI. *See* ECF No. 2 at 18 (alleging that after Plaintiff's updated MRI was sent to Defendant Bader, Defendant Bader "called back . . . stating that there is no need to be seen by [Defendant Bader]"). Nothing in the Complaint reflects that Defendant Bader knew or believed that surgery was medically necessary upon review of the MRI.

At worst, even if Plaintiff's allegations as to Defendant Bader amount to medical malpractice, such a claim is not actionable under the Eighth Amendment. ECF No. 35 at 11 (citing *Stewart v. Pa. Dep't of Corr.*, 677 Fed. App'x 816, 820 (3d. Cir. 2017) ("[A] diagnostic failure, at worst, amounts to medical malpractice, which is not actionable under the Eighth Amendment."). "[M]edical negligence without accompanying deliberate indifference does not rise to the level of a constitutional violation." *Ryle v. Fuh*, 820 F. App'x 121, 123 (3d Cir. 2020); *see also Pearson*, 850 F.3d at 538 ("[E]ven if a reasonable jury could find that [the defendant] was negligent in

diagnosing or treating [the plaintiff's] pain, that would not be enough for the jury to find that [the defendant] acted with deliberate indifference in violation of the Eighth Amendment.").

Accordingly, the Court dismisses Plaintiff's Section 1983 claim against Defendant Bader.

### B. Medical malpractice claim

Pennsylvania Rule of Civil Procedure 1042.3 requires that a plaintiff bringing a claim of medical malpractice or medical negligence file a certificate of merit within 60 days after filing the complaint. Pa.R.C.P. No. 1042.3.

> The certificate must attest to the colorable merit of the claim by including one of the following statements: (1) that 'an appropriate licensed professional' has supplied a written statement that there is a reasonable probability that the defendant's conduct fell outside acceptable professional standards; (2) that the claim against the defendant is based solely on allegations against other professionals for whom the defendant is responsible; or (3) that expert testimony is unnecessary for prosecution of the claim.

*Perez v. Griffin*, 304 F. App'x 72, 74 (3d Cir. 2008). Rule 1042.3 is a substantive state law that applies in federal courts, to both represented plaintiffs and *pro se* plaintiffs. *Id.* Though failure to comply with Rule 1042.3 is not fatal if a plaintiff can show a "reasonable excuse" for the noncompliance (*id.*), an inmate's lack of access to their medical records and files is not a sufficient excuse for failing to file a certificate of merit. *Baumgardner*, 535 F. App'x at 77 n.5.

Here, Plaintiff commenced this action on March 1, 2023. The 60-day period for the filing of the certificate of merit or a motion for an extension expired on May 1, 2023. The case was placed in suspense on June 16, 2023, and ultimately removed from suspense on August 8, 2023, after which Plaintiff requested an extension of time to file a certificate of merit in a motion that

was filed on August 24, 2023. ECF No. 32.[8] The Court granted Plaintiff's motion, extending the deadline to file a certificate of merit to October 2, 2023. ECF No. 34.

Plaintiff requested a second deadline extension (ECF No. 42) which the Court granted, extending the deadline to November 1, 2023, and noting that "[n]o further deadline extensions will be granted." ECF No. 43. In that second request, Plaintiff wrote that his status as an incarcerated *pro se* plaintiff "makes the [litigation] process for plaintiff more tedious, time consuming, and difficult" due to the following: limited library access, limited recreational time during which Plaintiff could contact physicians and organizations assisting Plaintiff, prison lockdowns, limited access to phone calls, and slow mail delivery process. ECF No. 42 at 1-4. Plaintiff further wrote that he was in correspondence with the Medical Justice Alliance through the Legal Eagles organization, and that "it will take several weeks to pair plaintiff's case with the appropriate physician (orthopedic)." *Id.* at 4. Plaintiff attached an email message from Legal Eagles which states that Plaintiff had submitted a case request for review to medicaljusticealliance.org. *Id.* at 7. Plaintiff wrote that he was waiting for medical documentation from the prison's medical department, and that he was waiting to receive funds from his family to pay for the medical documents. *Id.* at 4. A form that Plaintiff attached to the motion shows that Plaintiff did not submit a "release of information form" to obtain medical documentation until August 18, 2023—well after the original May 1, 2023 deadline. *Id.* at 13.

Plaintiff requested a third deadline extension in a motion filed on November 2, 2023. ECF No. 49. In that request, Plaintiff stated that he received his medical records on October 5, 2023,

---

[8] The Court notes that attached to the August 24, 2023 motion was Plaintiff's Answer to Defendants Little, Dancha, Naji, Nicholson, and Wellpath's Motion to Dismiss—not a document with supporting arguments or information regarding Plaintiff's request for a deadline extension.

but that he was not able to make copies of documents due to copying costs and a change in the library copying system. *Id.* at 2. In the same motion, Plaintiff requested that the Court compel an MRI. *Id.* at 3. Plaintiff attached a form in which he requested an MRI of his knee to which the Corrections Health Care Administrator responded that only a medical provider could authorize such a test. *Id.* at 11. The Court denied the motion, having already granted Plaintiff two deadline extensions to file a certificate of merit. ECF No. 50.

Plaintiff's status as an incarcerated and *pro se* litigant, and difficulties that may come with such a status, do not eliminate the requirements of Rule 1042.3. *See Perez v. Griffin*, No. 1:06-CV-1468, 2008 WL 2383072 at *3 (M.D. Pa. June 9, 2008), *aff'd*, 304 F. App'x 72 (3d Cir. 2008) (affirming district court's granting of motion for judgment on the pleadings after incarcerated plaintiff failed to file a certificate of merit); *see also Koukos v. Chester Cnty.*, No. CV 16-4602, 2017 WL 549150, at *4 (E.D. Pa. Feb. 7, 2017) ("It is well established that the requirement [of Rule 1042.3] applies to inmates who receive medical care while incarcerated.") (citing cases).

Similar to Plaintiff here, the incarcerated plaintiff in *Zierke v. United States* failed to file a certificate of merit and argued that "he is 'incarcerated' and 'is locked down 23 hrs a day and is unable to locate a licensed liver expert, nor can he get assistance from BOP medical staff, who are at the core of this law suit, and [he] cannot simply forge a doctor's name.'" No. 3:CV-15-0264, 2016 WL 862788, at *7 (M.D. Pa. Mar. 7, 2016) (citing Brief in Opposition at 7). The court there found the plaintiff's argument without merit, reasoning that the Certificate of Merit requirement applies to all plaintiffs, including *pro se* and incarcerated plaintiffs, and dismissed the plaintiff's medical negligence claim. *Id.* Here, Plaintiff did not file the required certificate of merit, nor has he provided a reasonable excuse for the noncompliance.

Accordingly, the Court dismisses Plaintiff's medical malpractice claim against Defendant Bader.

## V. CONCLUSION

For the foregoing reasons, Defendant Bader's Motion to Dismiss (ECF No. 44) is granted in full. The Section 1983 deliberate indifference claim against Defendant Bader is dismissed without prejudice to file an Amended Complaint by January 16, 2024. If no Amended Complaint is filed by that date, the Court will consider that claim dismissed with prejudice. The medical malpractice claim against Defendant Bader that relates to Plaintiff's knee condition is dismissed with prejudice, as amendment would not cure Plaintiff's failure to file the requisite certificate of merit within the Court-ordered deadline. A separate Order will be issued.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, J.**