**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| ANDRE KITTRELL, | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | **CIVIL ACTION NO. 23-CV-0811** |
| | : | |
| LIEUTENANT OLIVER *and* TERRI | : | |
| SECHRENGOST, | : | |
| *Defendants*. | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                              **March 3, 2026**

Defendants Lieutenant Oliver and Terri Sechrengost (captioned incorrectly as "Terry")

move for summary judgment as to Plaintiff Andre Kittrell's federal law claims for deliberate

indifference and state law claim for medical negligence, ECF No. 82 (the "Motion"). For the

reasons set forth below, the Court will grant Defendants' Motion for Summary Judgment with

respect to Plaintiff's federal law claims. The Court will decline to exercise supplemental

jurisdiction over the remaining state law claim against Defendant Sechrengost and will therefore

dismiss that claim without prejudice.

## I.    BACKGROUND

Plaintiff Andre Kittrell, a former inmate at State Correctional Institution – Houtzdale ("SCI

Houtzdale"), filed a *pro se* Complaint against forty-two defendants alleging claims for deliberate

indifference and medical malpractice relating to a knee injury and rectal bleeding. ECF No. 2.[1]

Plaintiff's claims against most of the Defendants have been dismissed by the Court. *See* ECF Nos.

---

[1] Plaintiff attempted to file an Amended Complaint in this action, ECF No. 65, but the Court ordered that the Amended Complaint be stricken because it was "'redundant' and 'immaterial' with respect to the remaining Defendants and claims in this case," ECF No. 70 at 1. Accordingly, the original Complaint (ECF No. 2) is the operative complaint. *See id.* at 2.

7, 56, 58, 60. The only remaining claims are (1) deliberate indifference claims against Lt. Oliver and Terri Sechrengost, and (2) a negligence claim against Terri Sechrengost relating only to Plaintiff's knee injury. *See id.* The facts underlying these claims are further described below.

Plaintiff sustained serious injuries to his left knee following a car accident on August 29, 2019. ECF No. 86 at 17. Plaintiff was diagnosed with a torn anterior cruciate ligament ("ACL") and given a metal knee brace to stabilize his knee. *Id.* Plaintiff wore the metal knee brace during his time at George W. Hill Correctional Facility from August 2019 to May 2021. *Id.* In May 2021, Plaintiff was transferred to SCI Houtzdale and upon his arrival, Defendant Lt. Oliver confiscated the metal knee brace because it contained metal bars that could potentially be made into a weapon. *Id.*; ECF No. 82-4 at 2. In exchange, Defendant Oliver provided Plaintiff with a soft knee sleeve and crutches. ECF No. 86 at 18. According to Plaintiff, Defendant Oliver stated that he would send a medical request regarding the use of Plaintiff's metal knee brace but Plaintiff never received permission to use his metal knee brace during the entirety of his incarceration at SCI Houtzdale. *Id.* Plaintiff states that the soft knee sleeve he was given as an alternative provided significantly less support and stability than the metal knee brace. *Id.*

On July 13, 2021, Plaintiff was taken to Penn State Orthopedics and seen by Dr. Bader, who examined Plaintiff's knee and recommended that he receive a follow-up MRI. *Id.* On September 28, 2021, Plaintiff received an MRI of his left knee at UPMC Altoona. *Id.*; ECF No. 82-3. The results of this MRI showed that Plaintiff's ACL was "intact" and did not require surgery or further orthopedic follow-up. ECF No. 86 at 18; ECF No. 82-2 at 2. Concerned about the accuracy of the September 2021 MRI, Plaintiff wrote letters to Dr. Bader's office seeking clarification about his medical condition and inquiring about follow-up care. ECF No. 86 at 18. In November 2021, Dr. Bader's office informed SCI Houtzdale of Plaintiff's outreach, after which

2

Defendant Terri Sechrengost instructed Plaintiff not to contact Dr. Bader directly. *Id.* Defendant Sechrengost told Plaintiff that he was not allowed to communicate directly with outside medical providers and had to utilize the prison's medical department for such communications instead. *Id.*

During his time at SCI Houtzdale, Plaintiff filed several grievances regarding his medical care at the prison, including the two grievances relevant to the instant Motion: (1) Grievance No. 953241, filed on November 3, 2021, regarding Plaintiff's alleged lack of access to Dr. Bader and denial of proper orthopedic follow-up after his September 2021 MRI; and (2) Grievance No. 964185, filed on January 13, 2022, regarding ongoing medical issues with Plaintiff's left knee. *Id.* at 19; *see* ECF Nos. 82-6, 82-7. Plaintiff appealed Grievance No. 953241 through two rounds of appeals in the prison system and received a final appeal decision, which denied his grievance and requested relief because upon a review of Plaintiff's medical record, "it was determined that the medical care provided was reasonable and appropriate." ECF No. 82-6 at 2. As to Grievance No. 964185, Plaintiff attempted to appeal it to final review but his appeal was dismissed because the grievance was not submitted properly for initial review. ECF No. 82-7 at 2.

On March 1, 2023, in connection with the above events, Plaintiff filed a complaint against forty-two defendants, asserting claims for deliberate indifference to his serious medical needs in violation of the Eighth Amendment and for medical negligence. ECF No. 2. The Court has dismissed Plaintiff's claims against most of the Defendants at different times over the course of this litigation.[2] The only claims remaining are constitutional claims for deliberate indifference

---

[2] Following an initial screening of Plaintiff's *pro se* Complaint, the Court permitted service of (1) the § 1983 deliberate indifference claims against Lt. Oliver, PA Nicholson, Dr. Little, Wellpath, Terry Sechrengost, Dr. Bader, UPMC Altoona, and Dr. Tokhi; and (2) the negligence or medical malpractice claims against Sechrengost, Dr. Bader, UPMC Altoona, and Dr. Tokhi, based on Plaintiff's knee injury only, and dismissed Plaintiff's claims against all other Defendants. ECF No. 6 at 29; ECF No. 7. On November 16, 2023, the Court dismissed Plaintiff's claims against Defendants Little, Nicholson, and Wellpath. ECF No. 56. On November 21, 2023, the Court

against Defendants Oliver and Sechrengost, and a state law claim for medical negligence against Sechrengost. On October 13, 2025, Defendants Oliver and Sechrengost moved for summary judgment as to Plaintiff's claims against them. ECF No. 82. On November 24, 2025, Plaintiff filed his opposition to Defendants' Motion for Summary Judgment. ECF No. 86. The Motion is now ripe for adjudication.

## II.    <u>LEGAL STANDARD</u>

Summary judgment is appropriate when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When deciding a motion for summary judgment, courts must view the record "in the light most favorable to the nonmoving party." *Razak v. Uber Techs., Inc.*, 951 F.3d 137, 144 (3d Cir. 2020). However, "[s]peculation" and "conclusory allegations" are insufficient to defeat a summary judgment motion. *Id.* (alteration in original) (citation omitted). Ultimately, only disputes based on which a "reasonable jury could return a verdict for the nonmoving party" can support the denial of a motion for summary judgment. *Id.* (citation omitted).

## III.    <u>DISCUSSION</u>

Defendants Lt. Oliver and Terri Sechrengost move for summary judgment on Plaintiff's federal claims for failure to exhaust his administrative remedies and failure to establish his claims on the merits. ECF No. 82 at 8–11, 15–17. Defendants also argue that Plaintiff's federal claims are barred by qualified immunity. *Id.* at 11–12. As to Plaintiff's state law claim against Defendant Sechrengost, Defendants move for summary judgment on the basis that this claim is barred by sovereign immunity and fails on the merits. *Id.* at 12–14. Because the Court will grant Defendants'

---

dismissed Plaintiff's claims against UPMC Altoona and Dr. Tokhi. ECF No. 58. And on November 30, 2023, the Court dismissed Plaintiff's claims against Dr. Bader. ECF No. 60.

Motion as to Plaintiff's federal claims, and there are no factors that justify retaining jurisdiction, the Court will decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claim.

### A. Plaintiff Failed to Exhaust His Administrative Remedies

Pursuant to the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), a prisoner must properly exhaust all administrative remedies that are "available"—that is, remedies that are "capable of use to obtain some relief for the action complained of." *Webb v. Dep't of Just.*, 117 F.4th 560, 567 (3d Cir. 2024) (citation omitted); *see also Perttu v. Richards*, 605 U.S. 460, 464–65 (2025). Proper exhaustion gives prisons an opportunity to resolve complaints internally, screen out claims that lack merit, and develop an administrative record to assist in any later litigation. *See Booth v. Churner*, 532 U.S. 731, 737 (2001). In order to properly exhaust, "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006); *see Jones v. Bock*, 549 U.S. 199, 218 (2007) (explaining the Supreme Court's holding in *Woodford*). The applicable procedural rules a prisoner must follow to properly exhaust "are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218. And so, the Court turns to the grievance process available to inmates at SCI Houtzdale to determine whether Plaintiff properly exhausted his administrative remedies.

The formal procedure through which inmates in the custody of the Pennsylvania Department of Corrections may seek resolution of problems arising during their term of confinement is known as the Inmate Grievance System. Pa. Dep't of Corr., *Inmate Grievance System*, DC-ADM 804 (effective May 1, 2015). The Inmate Grievance System requires an inmate to file a grievance within fifteen working days of the underlying event, using the designated

grievance form. *Id.* §§ 1(A)(5), 1(A)(8). If that deadline is missed, the inmate may request an extension by submitting a written explanation to the Facility Grievance Coordinator, who may grant additional time. *Id.* § 1(C)(2). This extension request is part of the grievance process and must be used once any temporary obstacle is removed. *See Talley v. Clark*, 111 F.4th 255, 263–65 (3d Cir. 2024) (inmate who lacked writing materials was required to seek an extension once he procured writing implements). Failure to request an extension or pursue the required appeals means the inmate has not fully exhausted the administrative remedies available under Policy 804. *See id.; see also Jones*, 549 U.S. at 217–18 (explaining that the proper exhaustion requirement is "not satisfied when grievances [are] dismissed because prisoners had missed deadlines set by the grievance policy").

The Inmate Grievance System consists of an initial review stage and two rounds of appeals. DC-ADM 804 §§ 1(C), 2(A), 2(B). The initial grievance "must include a statement of the facts," which "shall include the date, approximate time, and location of the event(s) that gave rise to the grievance." *Id.* § 1(A)(11). The initial grievance also "shall identify individuals directly involved in the event(s)." *Id.* The grievance policy provides that "[a]ny grievance based on separate events must be presented separately, unless it is necessary to combine the issues to support the claim." *Id.* § 1(A)(14). If the initial grievance is not properly submitted in accordance with the procedures of the Inmate Grievance System, the grievance will be rejected and the inmate may re-submit the grievance or appeal the rejected grievance. *Id.* §§ 1(A)(20)–(21), 1(C)(4). At each stage of appeal, the appeal must be made in accordance with the Inmate Grievance System's "procedures manual" and must comply with all procedures for each earlier step in the review process. *Id.* §§ 2(A)(2)(b), 2(B)(1)(d). Indeed, "[f]ailure to comply may result in the appeal being dismissed." *Id.* § 2(B)(1)(f).

Here, Plaintiff filed two grievances relating to his knee injury: (1) Grievance No. 953241, filed on November 3, 2021, claims that the September 2021 MRI showing a normal result was erroneous and requests that Plaintiff be permitted to see the email from Dr. Bader stating that there is no further need for follow-up, ECF No. 82-6 at 17–19; and (2) Grievance No. 964185, filed on January 13, 2022, details an allegedly inadequate visit with the prison's medical department, complains of persistent pain in his knee, and continues to dispute the accuracy of the September 2021 MRI results, ECF No. 82-7 at 3–4. Plaintiff appealed the first grievance, No. 953241, to the final review stage, *see* ECF No. 82-6 at 2, but his appeal of the second grievance, No. 964185, was dismissed for "failure to comply with the provisions of the DC-ADM 804," ECF No. 82-7 at 2. Specifically, Grievance No. 964185 complained of multiple events, disputed previous grievance decisions, and described events that were not within fifteen working days of the date of the grievance. *Id.* at 5.

In any case, neither Grievance No. 953241 nor Grievance No. 964185 mentions Defendant Oliver's confiscation of Plaintiff's metal knee brace or Defendant Sechrengost's instruction to Plaintiff not to contact Dr. Bader's office. *See* ECF Nos. 82-6, 82-7. Pursuant to the Inmate Grievance System, Plaintiff was required to file a grievance pertaining to each of these incidents within fifteen working days of the underlying event. *See* DC-ADM 804 § 1(A)(8); *id.* § 1(A)(11)(a) –(b) (the grievance "shall include the date, approximate time, and location of the event(s) that gave rise to the grievance" and "shall identify individuals directly involved in the event(s)"); *see also Spruill v. Gillis*, 372 F.3d 218, 233 (3d Cir. 2004) (explaining that the verb "shall" denotes a mandatory requirement of a prison's grievance system). Plaintiff does not argue in his summary judgment briefing that he filed any grievances pertaining to these two events. *See* ECF No. 86 at

13–15. Rather, Plaintiff contends that administrative remedies were unavailable to him and exhaustion should be excused because further grievances would have been futile. *Id.*

The Supreme Court has recognized three scenarios where an administrative remedy, though formally in place, is not "available." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). These include when the administrative remedy "operates as a simple dead end," is "so opaque that it becomes, practically speaking, incapable of use," or when prison officials "thwart inmates from taking advantage of [it] through machination, misrepresentation, or intimidation." *Rinaldi v. United States*, 904 F.3d 257, 266–67 (3d Cir. 2018) (quoting *Ross*, 578 U.S. at 643–44). Plaintiff fails to show that the grievance process at SCI Houtzdale operated as a "dead end" or was "so opaque that it [became], practically speaking, incapable of use." *Ross*, 578 U.S. at 643. For example, Plaintiff does not claim in his briefing that he unsuccessfully attempted to file grievances or that he filed grievances and received no response. *See, e.g., Shifflett v. Korszniak*, 934 F.3d 356, 365–66 (3d Cir. 2019) (finding that a grievance process was a dead end where prison officials failed to respond to grievances within the timeframe mandated by their own policy); *Bond v. Horne*, 553 F. App'x 219, 222 (3d Cir. 2014) (finding a process was a dead end where the plaintiff's grievances were ignored multiple times). Plaintiff has demonstrated that he understands the Inmate Grievance System, having utilized it to submit a grievance in connection with his September 2021 MRI result and having seen it through to a final review decision. *See* ECF No. 82-6. Thus, Plaintiff has failed to show that the prison's grievance process was unavailable to him.

To establish that prison officials thwarted him from making use of an administrative remedy, an inmate must show that officials affirmatively blocked his use of the grievance process "through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 644; *Brown v. Croak*, 312 F.3d 109, 112–13 (3d Cir. 2002) (dispute of fact existed as to whether prison staff thwarted

inmate from exhausting remedies by telling the inmate to wait to file a grievance after an investigation concluded). Here, Plaintiff does not point to any instances of prison officials blocking his use of the Inmate Grievance System, such as making threats or providing misleading instructions that prevented him from filing grievances about the confiscation of his metal knee brace or Defendant Sechrengost's directive to not contact Dr. Bader. The record therefore does not support that prison officials thwarted Plaintiff's ability to file grievances. With respect to Plaintiff's futility argument, the fact that one of Plaintiff's grievances regarding his medical condition was denied after final review (Grievance No. 953241) and the other was dismissed for failure to comply with submission guidelines (Grievance No. 964185) does not show that further grievances would have been futile. At any rate, the Third Circuit does not recognize a futility exception to the PLRA's exhaustion requirement. *Banks v. Roberts*, 251 F. App'x 774, 776 (3d Cir. 2007) (noting "this Court's bright line rule that 'completely precludes a futility exception to [the PLRA's] mandatory exhaustion requirement'" (alteration in original)) (quoting *Nyhuis v. Reno*, 204 F.3d 65, 71 (3d Cir. 2000)); *Harrell v. Barbeau*, No. 19-cv-2083, 2020 WL 6047562, at *2 (M.D. Pa. Oct. 13, 2020) (recognizing that there is no futility exception to the PLRA's exhaustion requirement).

As such, Plaintiff failed to exhaust his administrative remedies with respect to Defendant Oliver's confiscation of his metal knee brace and Defendant Sechrengost's instruction to not contact Dr. Bader. Plaintiff also cannot show that his failure to exhaust should be excused due to the unavailability of administrative remedies or prison officials thwarting his use of the grievance process. Therefore, the Court will grant summary judgment to Defendants Oliver and Sechrengost as to Plaintiff's claims under federal law.

### B. Plaintiff Produced No Evidence that Defendants Acted with Deliberate Indifference

Even if Plaintiff can be found to have properly exhausted his claims against Defendants Oliver and Sechrengost based on the two grievances he did file or that his failure to exhaust was excused, Plaintiff's constitutional claims would still fail on the merits. To survive summary judgment on an Eighth Amendment constitutional claim based on the failure to provide medical treatment, a prisoner must put forward evidence indicating that prison officials were deliberately indifferent to the prisoner's serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *see also Baumgardner v. Ebbert*, 535 F. App'x 72, 75 (3d Cir. 2013) (per curiam). "A medical need is serious . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotation marks and citation omitted); *see also Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023 (3d Cir. 1991) (holding that a serious medical need exists where "failure to treat can be expected to lead to substantial and unnecessary suffering, injury, or death"). Here, Plaintiff's knee injury involving a torn ACL is a serious medical need. *See Romero v. Ahsan*, 827 F. App'x 222, 226 (3d Cir. 2020) ("[I]t is clear that [Plaintiff's] injury—involving a torn anterior cruciate ligament (ACL), meniscal tear, and other knee damage—constituted a serious medical condition that was diagnosed by a physician as requiring treatment." (internal quotation marks and citation omitted)).

To establish a genuine dispute of material fact regarding Defendants' alleged deliberate indifference of this serious medical need, Plaintiff needed to point to evidence of the Defendants' subjective awareness of his medical need. "'[D]eliberate indifference entails something more than mere negligence' and is a subjective standard that requires the official to both 'be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists' and to 'also draw the inference.'" *Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (quoting *Farmer*, 511 U.S. at 835–37). Deliberate indifference is demonstrated, for example, "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).

The Court finds that Plaintiff has not offered any evidence showing that Defendants Oliver and Sechrengost (1) knew of a need for medical treatment but intentionally refused to provide it; (2) delayed necessary medical treatment based on a non-medical reason; or (3) prevented Plaintiff from receiving necessary medical treatment. With regards to Defendant Oliver, Plaintiff argues that "Lt. Oliver knew Plaintiff had a serious knee injury requiring orthopedic support, as evidenced by the prescribed metal brace Plaintiff was wearing" and "Lt. Oliver knew or should have known that a soft knee sleeve provides substantially less support and protection than a rigid metal immobilizer." ECF No. 86 at 9. Other than making conclusory statements about what Defendant Oliver purportedly knew about Plaintiff's condition, Plaintiff provides no evidence from which a factfinder could deduce that Defendant Oliver knew that Plaintiff's metal knee brace was a necessary medical treatment and intentionally refused to provide it. For example, Plaintiff does not produce any evidence indicating that the metal knee brace was prescribed by a medical provider or that a medical provider conveyed to Defendant Oliver that the metal knee brace was medically necessary.

With regards to Defendant Sechrengost, Plaintiff claims that her instruction to Plaintiff not to contact Dr. Bader interfered with his medical care and constituted deliberate indifference

11

because "[b]y preventing Plaintiff from contacting Dr. Bader, Sechrengost effectively blocked Plaintiff's ability to obtain a second opinion or clarification about his orthopedic care." *Id.* at 10. Defendants argue that Sechrengost did not have the authority to prevent Plaintiff from contacting anyone, including an external medical provider, ECF No. 82 at 10, but regardless of whether Sechrengost actually had the power to stop Plaintiff from contacting Dr. Bader, Sechrengost's instruction to Plaintiff not to contact Dr. Bader did not affect the medical care that Plaintiff received during his time at SCI Houtzdale. In fact, by the time Plaintiff reached out to Dr. Bader— which was before Defendant Sechrengost instructed him not to—Dr. Bader had already reviewed the results of Plaintiff's September 2021 MRI and determined that he did not need to see Plaintiff for a follow-up appointment.[3] ECF No. 82-2 at 2. And even after this incident, Plaintiff continued to be seen by the prison's medical department, as evidenced by Plaintiff's second grievance, which complained of certain behaviors by prison personnel during a sick call that Plaintiff attended. ECF No. 82-7 at 3.

Thus, because Plaintiff has failed to produce any evidence showing that Defendants Oliver and Sechrengost acted with deliberate indifference regarding his medical needs, summary judgment would also be properly granted on the merits in favor of Defendants. Based on the Court's conclusions regarding exhaustion and the merits of Plaintiff's federal law claims, the Court will not comment on Defendants' arguments as to the applicability of qualified immunity.

---

[3] Earlier in this action, the Court dismissed Plaintiff's claim for deliberate indifference against Dr. Bader for changing his recommended course of treatment after reviewing the September 2021 MRI, finding that Plaintiff alleged mere disagreement with his medical treatment in his Complaint. ECF No. 59 at 10. "[T]he deliberate indifference standard affords considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients," and a court "must disavow any attempt to second-guess the propriety or adequacy of [their] particular course of treatment so long as it remains a question of sound professional judgment." *Pearson*, 850 F.3d at 538 (internal quotation marks and citations omitted).

### C.  Plaintiff's State Law Claim Against Defendant Sechrengost Is Dismissed

Having granted summary judgment to Defendants on Plaintiff's federal law claims, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claim against Defendant Sechrengost. When a district court has dismissed all claims over which it had original jurisdiction before trial, it must decline to adjudicate the remaining state law claims "unless considerations of judicial economy, convenience, and fairness" support retaining jurisdiction. *Talley*, 111 F.4th at 266 n.6 (citation omitted); *see also* 28 U.S.C. § 1367(c)(3). Because the Court will grant summary judgment to Defendants with respect to Plaintiff's federal law claims, no claims remain over which there is original jurisdiction and considerations of "judicial economy, convenience, and fairness" do not support retaining jurisdiction. The case is at the summary judgment stage, no significant judicial resources have been expended on the state law claim, and there is no indication that requiring Plaintiff to proceed in state court would be so unfair or inconvenient as to justify retaining jurisdiction.

Further, Plaintiff has failed to support his medical negligence claim against Defendant Sechrengost with a Certificate of Merit, even after the Court granted him two extensions of time to do so. *See* ECF Nos. 34, 43. Pennsylvania Rule of Civil Procedure 1042.3 requires that a plaintiff bringing a claim of medical malpractice or medical negligence file a certificate of merit "with the complaint or within sixty days after the filing of the complaint." Pa. R. Civ. P. 1042.3(a). Rule 1042.3 is a substantive state law that applies in federal courts, to both represented plaintiffs and *pro se* plaintiffs. *Perez v. Griffin*, 304 F. App'x 72, 74–75 (3d Cir. 2008). This Court has previously dismissed Plaintiff's claims of medical malpractice against other Defendants for failing to file the required certificate of merit and providing no reasonable excuse for noncompliance. *See* ECF No. 55 at 11; ECF No. 57 at 9; ECF No. 59 at 13. Indeed, Plaintiff acknowledges that he did not file a

certificate of merit and does not oppose dismissal of his state law claim against Sechrengost. ECF No. 86 at 15.

Accordingly, the Court dismisses Plaintiff's medical negligence claim against Defendant Sechrengost.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Defendants' Motion for Summary Judgment (ECF No. 82) as to Plaintiff's federal law claims. The Court will decline supplemental jurisdiction over Plaintiff's state law claim for medical negligence against Defendant Sechrengost and dismiss it without prejudice. **If Plaintiff chooses to file his state claim for medical negligence in state court, he is directed to be mindful of the fact that his deadline for doing so has been paused during the course of this lawsuit and for 30 days after this Court issues the present Opinion.** *See* 28 U.S.C. § 1367(d).

An accompanying Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

**CHAD F. KENNEY, JUDGE**

14